In re John E. **DRURY,** Respondent.

**A Member of the Bar of the District of Columbia Court of Appeals.**

**No. 96–BG–156.**

District of Columbia Court of Appeals.

Submitted Sept. 10, 1996.

Decided Oct. 10, 1996.

Before FERREN, SCHWELB and REID, Associate Judges.

REID, Associate Judge:

This matter, involving reciprocal discipline, is before us for the second time. Our first opinion is set forth in *In re Drury,* 638 A.2d 60 (D.C.1994) (*Drury I*). There we considered whether "the Board [on Professional Responsibility] may recommend an increased sanction as well as identical discipline or a lesser sanction" in a reciprocal discipline case. *Id.* at 63. Because we concluded that the Board could recommend an increased sanction, we remanded the case to the Board so that the respondent could have a "re-

newed opportunity" to address the sanction issue. *Id.* Following the remand hearing relating to the appropriate sanction, the Board recommends an increased sanction, as it did in *Drury I.* Although Virginia imposed a public reprimand with terms, the Board recommends a nine-month suspension and proof of fitness for reinstatement. We now adopt the Board's recommendation.

## I.

In 1992, the Eighth District Subcommittee of the Virginia State Bar "publicly reprimanded respondent with terms." The terms required respondent to obtain psychological counseling, successfully complete two continuing legal education seminars, agree to monitoring by other lawyers, and take other steps toward rehabilitation. After being informed of Virginia's action against respondent, this court ordered the Board on Professional Responsibility "to recommend ... whether reciprocal discipline should be imposed or whether the Board, instead, elects to proceed *de novo* pursuant to Rule XI, § 8." The Board decided to recommend reciprocal discipline. In relying on Rule XI, § 11(c)(4), the Board determined that "a substantially different sanction is warranted in the District of Columbia than was imposed by the Virginia Subcommittee." Consequently, it recommended suspension for a period of nine months and the showing of fitness prior to reinstatement. The respondent filed an appeal.

In its decision in *Drury I, supra,* this court set forth the details as to (1) why the respondent was disciplined in 1992 by Virginia for neglect of a client matter in the late nineteen eighties and early nineteen nineties, and for failure to withdraw from representation after suspension from practice, and (2) why the Board took steps to impose reciprocal discipline. *Drury I* further examined Rule XI, §§ 11(c) and 11(f) regarding the standards for reciprocal discipline and action which may be taken by this court. After its examination this court said:

> Given the presumption in favor of identical discipline, the form of the show cause order that was issued by this court, the fact that Bar Counsel supported identical disci-
> pline, the Board's correspondence to respondent regarding Bar Counsel's recommendation, the wording of the present rule, and the nature of the foreign jurisdiction's record, we conclude that, now with knowledge that the Board may recommend an increased sanction as well as identical discipline or a lesser sanction, respondent is entitled, as a matter of fairness, to a renewed opportunity to respond to the show cause order and to the letter from the Board in accordance with the applicable rules of this Court and of the Board, and to further consideration by the Board of the appropriate course of action and recommendation in light thereof.

638 A.2d at 63 (footnotes omitted).

On remand after our *Drury I* decision, the Board ordered "the case to be sent to a hearing committee for a hearing and recommendation on the sole issue of sanction." *See* Order of the Board on Professional Responsibility, June 1, 1994, at 2. The Board characterized the matter as "one of reciprocal discipline" and asked the hearing committee to address three issues: "(1) whether respondent had a psychological disorder that would meet a *Kersey*-type sanction; (2) whether these problems can be shown to have caused his misconduct under the rules of this jurisdiction; and (3) whether respondent is sufficiently rehabilitated to practice law without danger to the public." *Id.* at 1–3. Thus, although the hearing committee was to conduct an evidentiary hearing on respondent's psychological disorder and on the causal relationship of that disorder to respondent's professional misconduct, the hearing necessarily focused, in the end, not on a *de novo Kersey*-type determination, but on whether there was clear and convincing evidence to overcome the strong presumption supporting the Virginia authority's finding of a *Kersey*-type causal relationship in this case. *See Drury I,* 638 A.2d at 62–63 (citing D.C.Bar R. XI, § 11(f)) and *In re Zilberberg,* 612 A.2d 832, 834 (D.C.1992).

During his late October 1994, hearing following remand, the respondent presented evidence from his psychotherapist, Dr. Bruce

Copeland.[1] Dr. Copeland first consulted with the respondent about his personal concerns in Summer 1989, and began to see him on a regular basis beginning in September 1991. He concluded that the respondent suffered from significant depression (dysthymia) and a mixed personality disorder of mild to moderate severity at the time he neglected his client matter, and failed to withdraw from representation following his suspension from practice. Dr. Copeland opined that the depression "had been existing for at least a period of several years," and constituted "the major" disorder. He first saw the respondent on a weekly basis at the time of respondent's 1994 hearing, and held treatment sessions with him two to three times a month. He testified that the respondent "has made great strides . . . [and] is not in danger in his practice of law." Furthermore, the respondent no longer "meet[s] criteria for clinical depression."

Dr. Donald Vogel, a psychiatrist who testified on behalf of Bar Counsel, said the respondent suffered from a personality disorder, but was not "currently depressed" and "did not have a major depression, by history." However, Dr. Vogel did not see the respondent during his depression and did not review the psychological tests that Dr. Copeland administered during respondent's depression.

The respondent described his compliance with the terms of his Virginia public reprimand, including his required psychological counseling; efforts to streamline his law practice and to make his law office more efficient; completion of two continuing legal education courses; and notification that he

had passed the multi-state ethics examination. Stewart Enonomou, Esq., the respondent's monitor, confirmed his compliance with the requirements imposed on him by the Virginia Subcommittee.

In its Report and Recommendation, the Hearing Committee first concluded that at the time of his misconduct in Virginia, the respondent suffered "from a psychological disorder or disability that could merit the imposition of a *Kersey*-type sanction." *See In re Kersey*, 520 A.2d 321, 326 (D.C.1987).[2] Although the Hearing Committee discussed the testimony by Dr. Copeland and Dr. Vogel regarding the respondent's personality disorder, it emphasized Dr. Copeland's conclusion: "there's no doubt in my mind that there was a clinical depression, both prior to—back at least in 1989, when I saw him initially, and in 1991, when I saw him subsequent to the conduct in question, that there were clearcut symptoms of depression present." Second, the Hearing Committee determined that the "[r]espondent has shown by a preponderance of the evidence that his professional conduct *was* 'substantially affected' by the psychological impairment we have found to exist." Third, the Hearing Committee found "substantial evidence . . . that [the] [r]espondent is substantially rehabilitated from his psychological condition."[3] Finally, the Hearing Committee recommended the suspension, stay and probation sanction set forth above because: (1) "[r]espondent's pattern of misconduct and record of prior discipline is extensive";[4] (2) "this jurisdiction has never imposed a sanction of 'reprimand with terms,' either as original or reciprocal disci-

---

1. Dr. Copeland has a Ph.D in psychology, with a specialty in clinical psychology. He also holds a J.D. degree.

2. In *Kersey*, "we [held] that alcoholism is a mitigating factor to be considered in determining discipline." 520 A.2d at 326. We also concluded that "[b]ut for *Kersey's* alcoholism, his misconduct would not have occurred[,]" and that "this 'but for' test is the standard that must be met in order to prove causation in disciplinary cases involving alcoholism." *Id.* at 327. We also said that "when alcoholism has been a causal factor leading to professional misconduct, rehabilitation from that condition will be considered a significant factor in imposing discipline."

*Id.* Furthermore, we stated "that where there is significant evidence of rehabilitation, a period of actual suspension is not always mandated." *Id.*

3. The record indicates that the respondent has overcome several of the events that resulted in his depression, including problems with his oldest son, the dissolution of his marriage, and his wife's serious illness.

4. The record before us reveals that this court suspended the respondent in June 1990 for a period of four months for failure to prosecute a personal injury case and failure to tell his client that the case had been dismissed. The record also mentions other prior violations.

pline"; and (3) "both Dr. Copeland and Dr. Vogel concluded that he should remain in therapy."

The Board adopted the Report and Recommendation of the Hearing Committee, but added its views on two issues. First, with regard to the disagreement of the experts concerning whether the respondent suffered from clinical depression at the time of his misconduct, the Board stated: "though the Committee found evidence for depression, it did not necessarily conclude that the proof rose to the level required in an original case in the District of Columbia to justify mitigation based on disability."[5] Second, the Board emphasized that a personality disorder (as opposed to clinical depression), standing alone, could not serve as the basis for a mitigated sanction.

The Board recommends a nine-month suspension and a requirement to show fitness to practice prior to reinstatement. However, because the respondent proved that he suffered from clinical depression at the time he violated the rules of professional responsibility, and because of other mitigating factors, the Board recommends that the suspension and the fitness requirement be stayed while the respondent serves a two year period of probation. The Board also recommends that the respondent comply with the following conditions of probation: (a) avoid any further disciplinary violations; (b) remain in counseling throughout the period of his probation; and (c) follow any recommendations of his current therapist (Dr. Copeland). Bar Counsel did not take exception to the Board's report and recommendation, and the respondent filed no objection to it.

## II.

In our review of disciplinary cases, "[we defer] to the Board's recommended disposition unless the sanction is unwarranted or inconsistent with sanctions for comparable conduct." *In re Slosberg,* 650 A.2d 1329, 1330 (D.C.1994) (referencing D.C.Bar Rule XI, § 9(g); *In re Mintz,* 626 A.2d 926, 927 (D.C.1993)). In the reciprocal discipline cases, "this court can impose a greater sanction than that imposed in the other jurisdiction." *In re Dietz,* 653 A.2d 854, 855 (D.C. 1995) (citing *In re Drury (Drury I), supra,* 638 A.2d at 62). D.C.Bar Rule XI, § 11(c)(4) "provides for an exception to the imposition of reciprocal discipline where Bar Counsel or the attorney subject to discipline clearly demonstrates that 'the misconduct established [in the proceeding in the other jurisdiction] warrants substantially different discipline in the District of Columbia.'" *In re Garner,* 576 A.2d 1356, 1357 (D.C.1990).

Virginia publicly reprimanded the respondent but did not impose any period of suspension on him. In contrast, the Board has recommended (a) suspending the respondent for nine months and (b) conditioning reinstatement upon a showing of fitness to practice, but has recommended that we stay both the suspension and the fitness requirement in favor of a two year period of probation with conditions. Virginia also imposed terms and conditions which were to be met by February 13, 1994.[6] The Board has rec-

---

**5.** The Board noted that "the [Hearing] Committee settled the issue by deciding that the 'strong presumption' in favor of reciprocal discipline in this case had to be overcome by 'clear evidence that the attorney was *not* suffering from a qualifying psychological disorder.'" The Board then cited, with approval, the following distinction made by the Hearing Committee:

In a reciprocal discipline case ... the appropriate question may *not* be whether the District of Columbia necessarily would have utilized a *Kersey*-type sanction in the first instance, but rather whether there was a reasonable basis in the sister state for the utilization of that approach, and whether the disposition in the sister state is reasonably consistent with the resolution of similar matters in the District of Columbia.

Because the record contains substantial evidence that the respondent suffered from clinical depression at the time of his misconduct, and but for his depression, his misconduct would not have occurred; and because it is clear from the record that the Virginia Subcommittee was aware of Dr. Copeland's clinical depression diagnosis before imposing the May 1992 public reprimand with terms on the respondent; we do not reach the issue as to whether a personality disorder, standing alone, could serve as the basis for a mitigated sanction.

**6.** Five terms and conditions were imposed: (1) completion of a treatment program with a licensed psychologist; counseling could continue beyond February 14, 1994; (2) successful completion of two continuing legal education semi-

ommended imposition of conditions of probation which, as indicated above, differ from Virginia's terms and conditions.

The Hearing Committee and the Board determined that the respondent's pattern of misconduct warranted substantially different discipline in the District of Columbia. His prior discipline is "extensive" and includes a four month suspension in 1990.[7] In cases involving prior violations or neglect, the court has imposed suspensions ranging from six to nine months, rather than a public reprimand with terms. *See In re Kennedy,* 605 A.2d 600 (D.C.1992) (nine month suspension for unauthorized practice of law in another jurisdiction; respondent had been subjected to prior discipline); *In re Jones,* 534 A.2d 336 (D.C.1987) (six month suspension for neglect where past record of disciplinary violations existed). Hence, under the cases in this jurisdiction, the respondent's misconduct "would not have resulted in the same punishment here as it did in the disciplining jurisdiction [Virginia]." *In re Garner, supra,* 576 A.2d at 1357. A public reprimand with terms is not "within the range of sanctions that would be imposed for the same misconduct" in this jurisdiction. *Id.* Moreover, the difference between a public reprimand with terms and conditions and a suspension "is substantial." *Id.* Consequently, the Board's recommended greater sanction is warranted, and is consistent with sanctions in this jurisdiction for comparable conduct.

Because of mitigating factors, the Board recommended (a) staying the nine month suspension and the fitness requirement, and (b) imposing a two year period of probation. The mitigating factors included respondent's clinical depression at the time of his misconduct and his continuing therapy; the need to support his former wife, who has been seriously ill, as well as his sons; his decision to restrict his practice to a manageable number

of consulting and administrative matters; and the satisfaction of Virginia's terms of the public reprimand. The conditions which the Board has attached to his probation will help to protect the public, the courts, and the legal profession; and they will assure the respondent's continued fitness to practice law. *See In re Hutchinson,* 534 A.2d 919, 924 (D.C.1987) (en banc); *In re Steele,* 630 A.2d 196, 200 (D.C.1993).

Based upon the foregoing reasons, we accept the recommendation of the Board. Accordingly, it is

ORDERED that effective thirty days after the date of this order, respondent be suspended from the practice of law for nine months, and that he demonstrate fitness to practice prior to reinstatement. It is

FURTHER ORDERED that effective thirty days after the date of this order, the nine month period of suspension and the fitness requirement be stayed, and that respondent commence and complete a two year period of probation during which he shall comply with the following conditions: (a) avoid any further disciplinary violations; (b) remain in psychological counseling throughout the period of probation; and (c) follow any recommendations of his current therapist (Dr. Bruce Copeland) concerning the frequency of his therapy and the designation of a different therapist. If the respondent fails to meet the terms of his probation at any time, the Board shall inform this court so that an appropriate order may be entered, upon a proper showing, suspending the respondent for nine months and ordering him to show fitness for reinstatement to the practice of law in accordance with D.C.Bar Rule XI, § 16.

SCHWELB, Associate Judge, concurring:

nars offered by the Virginia Law Foundation on Trial Practice and Appellate Practice; (3) take and receive an adjusted score of 75 or higher on the Multi-state Professional Responsibility Examination; (4) consult with a Virginia attorney regarding office procedures or forms and generalized practice questions; and (5) implement a docket control system and create written office policy concerning client communications; and submit to spot checks relative to the docket con-

trol system and the maintenance of financial records required by the Code of Professional Responsibility. Respondent met these requirements.

7. Under reciprocal discipline, the respondent was subjected to the same four month suspension in Virginia.

The primary purpose of the disciplinary system is to protect the public, and I question whether that purpose is served by treating "clinical depression" and "a personality disorder" as factors warranting more lenient sanctions. Drury's affliction with these disorders provides little consolation to the client whose appeal was dismissed as a result of Drury's aggravated neglect. Given *Kersey* [1] and its progeny, however, I join the judgment and opinion of the court.

1. *In re Kersey*, 520 A.2d 321 (D.C.1987).