*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 18-BG-340

IN RE WENDELL ROBINSON, RESPONDENT.

A Member of the Bar of the District of Columbia Court of Appeals
(Bar Registration No. 377091)

On Report and Recommendation of the
Board on Professional Responsibility
(BDN-293-12)

(Argued February 27, 2019                        Decided February 20, 2020)

(Amended May 14, 2020)[*]

*Abraham C. Blitzer* for respondent.

*Hamilton P. Fox, III*, Disciplinary Counsel, with whom *Jennifer P. Lyman*, Senior Assistant Disciplinary Counsel, was on the brief, for the Office of Disciplinary Counsel.

Before BLACKBURNE-RIGSBY, *Chief Judge*, and FISHER and BECKWITH, *Associate Judges*.

---

[*] We granted respondent's April 21, 2020, motion to amend the opinion to reflect that respondent has since served his suspension and been reinstated. On February 20, 2020, this court had suspended respondent from the practice of law on May 30, 2018, and lifted that suspension on October 24, 2019.

BLACKBURNE-RIGSBY, *Chief Judge*: Disciplinary Counsel charged respondent Wendell Robinson with violating Rule 1.15(d) of the D.C. Rules of Professional Conduct for failing to hold disputed funds in trust during the pendency of a dispute with co-counsel. Though Disciplinary Counsel only charged respondent with violating Rule 1.15(d), the Hearing Committee, *sua sponte*, considered whether respondent also violated Rules 1.15(a) and (c) by intentionally misappropriating funds. The Hearing Committee found that respondent violated Rules 1.15(a), (c), and (d), and recommended that respondent be disbarred. The Board on Professional Responsibility ("Board") agreed that respondent violated Rule 1.15(d), but concluded that the Hearing Committee erred in considering the misappropriation charge under Rules 1.15(a) and (c). The Board rejected the proposed sanction of disbarment, and instead recommended that respondent be suspended for one year. We accept the Board's findings and recommended sanction.[1]

---

[1] Before the issuance of this opinion, respondent served his suspension and was reinstated to practice law. On May 30, 2018, this court suspended respondent pending the final disposition of the underlying proceeding. On July 25, 2019, respondent moved to lift the suspension. In an October 24, 2019, order, we lifted respondent's interim suspension, and ordered respondent to file with this court a D.C. Bar R. XI, § 14(g) affidavit, which we would consider submitted on July 16, 2018 (when he filed the same with the Board). Respondent filed the affidavit with this court on October 25, 2019.

**I.**

In September 2009, respondent and three others, D.C. attorneys Leonard L. Long and W. Thomas Stovall, II, and Virginia attorney William Thompson, associated to represent Tonyette Bables in a medical malpractice suit in Virginia. On February 2, 2010, Ms. Bables signed a retainer agreement naming all four as her attorneys. The agreement outlined a contingency-fee arrangement between attorney and client, but did not specify how the attorneys were to divide their fee among themselves. Respondent conducted the litigation largely on his own and eventually negotiated a settlement. Before the case settled, the lawyers disagreed on how to divide the attorneys' fees. Respondent assumed that, after paying Mr. Thompson a certain amount for his role as local counsel, the remaining fees would be distributed based on the work each attorney performed. That understanding was based, at least in part, on respondent's conversation with an Assistant Disciplinary Counsel, who referred him to D.C. Rule of Professional Conduct 1.5(e).[2]

---

[2] Under Rule 1.5(e) of the D.C. Rules of Professional Conduct:

A division of a fee between lawyers who are not in the same firm may be made only if:

(1) The division is in proportion to the services performed by each lawyer or each lawyer assumes joint responsibility for the representation.

(continued . . .)

Respondent testified that Mr. Long admitted respondent did all the work in the case, which respondent understood to be a concession that respondent was entitled to all of the attorneys' fees. Mr. Long and Mr. Stovall, however, testified that they orally agreed with respondent to pay Mr. Thompson an unspecified amount for his services, and then divide the remaining fee equally among the three attorneys. In a letter dated May 16, 2011, Mr. Long rejected respondent's proposal to split the fees based on the division of labor and suggested submitting the issue to arbitration.

In June 2011, Ms. Bables's case settled for $600,000, entitling the attorneys to collect $240,000 (i.e., forty percent of the settlement) in accordance with the retainer agreement. Respondent, however, initially told Ms. Bables that the attorneys would collect only $200,000 (i.e., one-third of the settlement). After co-counsel told respondent that the lawyers were actually entitled to $240,000, respondent informed Ms. Bables, who became upset. Respondent testified that he offered to pay Ms. Bables one-third of the $40,000 difference between the two

(. . . continued)
 (2) The client is advised, in writing, of the identity of the lawyers who will participate in the representation, of the contemplated division of responsibility, and of the effect of the association of lawyers outside the firm on the fee to be charged;
 (3) The client gives informed consent to the arrangement; and
 (4) The total fee is reasonable.

amounts. The settlement proceeds were credited to respondent's trust account on June 20, 2011, and ten days later, respondent paid Ms. Bables $360,000, and paid Mr. Thompson $15,000, leaving $225,000 to be disbursed among respondent, Mr. Long, and Mr. Stovall. By August 11, 2011, despite the fact that the three attorneys had not resolved the attorneys' fees issue, respondent had paid himself $193,350 and paid Mr. Long and Mr. Stovall each $15,700.

Mr. Long and Mr. Stovall filed a complaint with Disciplinary Counsel, and, on May 20, 2015, Disciplinary Counsel charged respondent with violating Rule 1.15(d) for failing to keep the disputed funds in his escrow account.[3] Respondent conceded, and the Hearing Committee found, that respondent violated Rule 1.15(d). The Hearing Committee credited testimony by Mr. Long and Mr. Stovall that the attorneys had agreed to split the attorneys' fees in equal parts. The

---

[3] Rule 1.15(d) states, in relevant part:

> When in the course of representation a lawyer is in possession of property in which interests are claimed by the lawyer and another person, or by two or more persons to each of whom the lawyer may have an obligation, the property shall be kept separate by the lawyer until there is an accounting and severance of interests in property. If a dispute arises concerning the respective interests among persons claiming an interest in such property, the undisputed portion shall be distributed and the portion in dispute shall be kept separate by the lawyer until the dispute is resolved.

Hearing Committee found that respondent "[r]epeatedly testified falsely" during the hearing when he stated that Mr. Long agreed that respondent was entitled to all or most of the settlement fees. The Hearing Committee also found that respondent committed misappropriation, which was not included in the Specification of Charges, in violation of Rules 1.15(a) and (c). Concluding that respondent violated Rules 1.15(a), (c), and (d), the Hearing Committee recommended that respondent be disbarred.

The Board agreed that respondent violated Rule 1.15(d), but concluded that the Hearing Committee erred when it considered the misappropriation charge. Based solely on the Rule 1.15(d) violation, the Board recommended that respondent be suspended for one year. Neither Disciplinary Counsel nor respondent disputes the Rule 1.15(d) violation or the Board's rejection of the misappropriation charge. Both Disciplinary Counsel and respondent, however, have filed exceptions to the Board's recommended sanction. Respondent seeks a thirty-day suspension, whereas Disciplinary Counsel urges this court to impose disbarment.

**II.**

"The scope of our review of the Board's Report and Recommendation is limited." *In re Bailey*, 883 A.2d 106, 115 (D.C. 2005) (quoting *In re Berryman*, 764 A.2d 760, 766 (D.C. 2000)). We will accept the Board's findings of fact, "unless they are unsupported by substantial evidence of record," but will review the Board's legal conclusions *de novo*. *In re Lee*, 95 A.3d 66, 72 (D.C. 2014) (quoting D.C. Bar R. XI, § 9(h)(1)). With respect to the Board's recommended sanction, we defer to the Board's recommendation unless doing so "would foster a tendency toward inconsistent dispositions for comparable conduct or would otherwise be unwarranted." *In re Ekekwe-Kauffman*, 210 A.3d 775, 785 (D.C. 2019) (quoting *In re Tun*, 195 A.3d 65, 74 (D.C. 2018)).

### A. Rule 1.15(d) Violation

Respondent concedes that he violated Rule 1.15(d) by failing to keep the disputed fees in a trust account pending resolution of the dispute between him and co-counsel. Respondent's concession is also supported by the record. The Hearing Committee credited Mr. Long's and Mr. Stovall's testimony that they, along with respondent, agreed to equally divide the attorneys' fees. Their testimony is supported by respondent's offer to return one-third of the difference between what Ms. Bables thought she was going to receive in the settlement and

what she actually received, reflecting respondent's understanding that each attorney was entitled to one-third of the fee. Given that shared understanding, respondent was required to place the disputed portion of the attorneys' fees in a trust account pending resolution of the dispute. Because he did not, respondent violated Rule 1.15(d).

We also adopt the Board's conclusion that the Hearing Committee erred when it added, *sua sponte*, a misappropriation charge to the case. Disciplinary Counsel is empowered to "dismiss a complaint, institute formal charges, or informally admonish an attorney," *In re Kitchings*, 779 A.2d 926, 932 (D.C. 2001) (citing D.C. Bar R. XI, § 8(b)), subject to prior approval by a Contact Member, an attorney member of the Hearing Committee who may "review and approve or suggest modifications of" Disciplinary Counsel's recommendations. D.C. Bar R. XI, § 4(e)(5). If the Contact Member disagrees with Disciplinary Counsel's recommendation, the case is submitted to the Chair of the Hearing Committee to make the final decision. Board Prof. Resp. R. 2.13. But there is no authority for the Hearing Committee, acting alone, to add charges that were not sought by Disciplinary Counsel or approved by a Contact Member. *See* D.C. Bar R. XI, §§ 5(c) (outlining powers and duties of the Hearing Committee), 6(a) (outlining powers and duties of Disciplinary Counsel).

In concluding that it was acting within the scope of its authority in "tak[ing] the admittedly extraordinary step of considering charges not levied by Disciplinary Counsel," the Hearing Committee relied on *In re Harris-Lindsey*, 19 A.3d 784 (D.C. 2011), a case in which we adopted the Board's rejection of a petition for negotiated discipline in favor of a contested proceeding. But *Harris-Lindsey* does not stand for the proposition that the Hearing Committee is authorized to unilaterally add charges not sought by Disciplinary Counsel. Instead, *Harris-Lindsey* simply highlights this court's authority to approve (or, in *Harris-Lindsey*, reject) a petition for negotiated disposition "in accordance with [the court's] procedures for the imposition of uncontested discipline." D.C. Bar R. XI, § 12.1(d). While the Hearing Committee correctly recognizes the seriousness with which this court views misappropriation, *see, e.g.*, *In re Addams*, 579 A.2d 190, 196 (D.C. 1990) (en banc) (holding disbarment as the presumptive discipline for all but negligent misappropriation), it overstepped its authority in considering the misappropriation charge here.

**B. Sanction**

Having concluded that respondent violated Rule 1.15(d), we now determine the appropriate sanction. We apply a strong presumption in favor of adopting the Board's sanction recommendation as long as it "falls within the wide range of acceptable outcomes." *In re Martin*, 67 A.3d 1032, 1053 (D.C. 2013) (quoting *In re Elgin*, 918 A.2d 362, 376 (D.C. 2007)). But "the responsibility for imposing sanctions rests with this court in the first instance." *In re Chapman*, 962 A.2d 922, 924 (D.C. 2009). We base our determination of sanctions on multiple factors, including "(1) the seriousness of the conduct, (2) prejudice to the client, (3) whether the conduct involved dishonesty, (4) violation of other disciplinary rules, (5) the attorney's disciplinary history, (6) whether the attorney has acknowledged his or her wrongful conduct, and (7) mitigating circumstances." *In re Martin*, 67 A.3d at 1053. To foster consistent dispositions, "we necessarily compare the instant case with prior cases in terms of the misconduct at issue, the attorney's disciplinary history, and any legitimate mitigating or aggravating circumstances." *In re Edwards*, 870 A.2d 90, 94 (D.C. 2005). The Board recommended that respondent be suspended from the practice of law for one year. We adopt that recommendation.

We agree with the Board that respondent's violation of Rule 1.15(d) was serious. Mr. Long and Mr. Stovall communicated to respondent on multiple

occasions that they disputed respondent's proposed division of attorneys' fees. Yet despite his awareness of the dispute, respondent made multiple payments to himself out of the disputed funds, all without telling Mr. Long or Mr. Stovall. With respect to the prejudice factor, the Board noted that respondent's failure to pay co-counsel potentially subjected Ms. Bables to a payment demand from Mr. Long or Mr. Stovall. However, no such demand was made and there is no evidence that Ms. Bables was otherwise prejudiced by respondent's misconduct. The Hearing Committee did not find that respondent's misconduct involved dishonesty, but it did find that respondent testified falsely, which warrants a greater sanction. *In re Ekekwe-Kauffman*, 210 A.3d at 798; *In re Martin*, 67 A.3d at 1054 ("Engaging in dishonest conduct to cover up other misconduct is absolutely intolerable and warrants a greater sanction." (cleaned up)). As discussed, because the Hearing Committee erred in considering the misappropriation charge, the Rule 1.15(d) violation is the only charge considered here. As to respondent's disciplinary history, respondent's previous disbarment for misappropriation favors a greater sanction here. *See In re Robinson*, 583 A.2d 691 (D.C. 1990). Respondent, however, has acknowledged his latest misconduct and concedes his Rule 1.15(d) violation here.

Respondent seeks a thirty-day suspension, claiming that his good-faith reliance on Rule 1.5 is a substantial mitigating factor, and that his conduct did not involve dishonesty or misrepresentation. Even if we were to find that respondent relied on his reading of Rule 1.5 in good faith, we must still account for other serious aggravating factors, such as his prior disbarment for misappropriation and his false testimony to the Hearing Committee. *See In re Cleaver-Bascombe*, 892 A.2d 396, 413 (D.C. 2006) (considering false testimony a significant aggravating factor). Further, we decline respondent's invitation to disturb the findings of the Hearing Committee and Board that respondent testified falsely, Mr. Long agreed that respondent was entitled to most or all of the fees, and Mr. Long was merely seeking from respondent a gift from the fees. The Hearing Committee found that respondent's testimony was contradicted by the written record, including respondent's own letters in which he referred to the lawyers' dispute. *See In re Lee*, 95 A.3d at 72.

In determining an appropriate sanction for respondent's misconduct, the Board relied on our decision in *Martin*, a non-misappropriation case involving an attorney's failure to hold disputed funds in trust. 67 A.3d at 1044. There we found

that Martin violated Rules 1.15(a) and (d)[4] when he transferred from his trust account to his operating account an amount he believed to be his proper fee, even though he knew the client disputed his entitlement to that fee and the client instructed him not to distribute the bulk of the settlement funds. *In re Martin*, 67 A.3d at 1043–44. We also found that Martin testified falsely regarding advice he received from the D.C. Bar Ethics Hotline about the disputed funds, and made two false statements on his Virginia Bar application concerning the dispute. *Id.* at 1054. We explained that "honesty is basic to the practice of law," and although "we have generally imposed relatively short periods of suspension for isolated instances of dishonesty, . . . we have imposed relatively longer suspensions where dishonesty is accompanied by other serious violations or is protracted." *Id.* at 1053 (citation and internal quotation marks omitted). We concluded that an eighteen-month suspension was warranted as Martin's dishonesty "was both protracted and intended to conceal or excuse earlier misconduct." *Id.* at 1054.

In the Board's view, respondent's misconduct here was not as serious as the misconduct in *Martin*, and thus, the imposition of an eighteen-month suspension was not warranted: Respondent's misconduct arose out of a dispute with co-

---

[4] At the time of the violation in *Martin*, Rule 1.15(d) was codified as Rule 1.15(c). *See In re Martin*, 67 A.3d at 1043 n.13.

counsel, not a client; respondent's client was not prejudiced by his misconduct; there was no allegation that he mishandled the underlying case; and the respondent in *Martin* engaged in meritless litigation in order to delay payment of the funds, going so far as to condition payment on the client's withdrawal of its disciplinary complaint. *See In re Martin*, 67 A.3d at 1053–54. The Board, however, found that respondent's false testimony and prior disbarment for misappropriation were troubling aggravating factors in this case, and thereby recommended a one-year suspension. We agree.

While we recognize that respondent has had issues with money management, we find no support in our case law to disbar respondent absent a finding of misappropriation for the instant Rule 1.15(d) violation. Additionally, considering that the client in this case was not prejudiced by respondent's misconduct, and that respondent has accepted responsibility for this violation, disbarment would be too severe a sanction. We thus adopt the Board's recommendation of a one-year suspension because it falls within the wide range of acceptable outcomes, is supported by our case law, and is warranted under the circumstances. *See In re Daniel*, 11 A.3d 291, 301 (D.C. 2011) (imposing a three-year suspension in a non-misappropriation case in which respondent violated multiple rules and provided false statements in a sworn affidavit); *In re Martin*, 67

A.3d at 1053–54 (imposing an eighteen-month suspension in a non-misappropriation case involving serious dishonesty and interference with the administration of justice).

## III. Conclusion

Accordingly, we accept the Board's decision and recommendation that respondent be suspended from the practice of law in the District of Columbia for a period of one year, with reinstatement conditioned upon compliance with D.C. Bar Rule XI, § 16(c). As noted, *supra* note 1, respondent served his suspension, beginning on July 16, 2018, and has since been reinstated.

*So ordered.*