In re James T. ZELLOE, Respondent.

A Member of the Bar of the District of Columbia Court of Appeals.

No. 95–BG–41.

District of Columbia Court of Appeals.

Submitted Nov. 26, 1996.

Decided Dec. 19, 1996.

Before TERRY and RUIZ, Associate Judges, and MACK, Senior Judge.

RUIZ, Associate Judge:

Respondent is a member of the Bar of the District of Columbia Court of Appeals and

the Commonwealth of Virginia. On November 16, 1994, respondent was publicly reprimanded by the Fifth District–Section II Subcommittee of the Virginia State Bar (the Committee). The Committee determined that respondent had violated a number of Virginia disciplinary rules in connection with the closing of a bank loan on behalf of a client with whom he shared a business relationship.[1] The Office of Bar Counsel for the District of Columbia forwarded a certified copy of the order of public reprimand to this court. We, in turn, entered an order referring the matter to the Board of Professional Responsibility for a recommendation whether identical, greater or lesser discipline should be imposed as reciprocal discipline, or whether the Board elected to proceed de novo, pursuant to D.C. Bar Rule XI, § 11.

The Board unanimously decided to proceed by reciprocal discipline but disagreed with the imposition of the identical sanction under D.C. Bar Rule XI, § 11(c)(4). Instead, the Board recommends that respondent be suspended for 90 days. Bar Counsel does not support the Board's recommendation and filed a separate brief requesting that identical discipline of public censure be imposed. Respondent filed a brief supporting the imposition of public censure.

■ The Virginia disciplinary action is based on the following conduct agreed to by respondent: In October 1989, Federal Savings Bank (FSB) loaned $450,000 to Mr. James Turner, using Turner's residence as collateral. At the time of the loan, there were two judgments and four loans recorded as liens against Turner's residence and a notice of lis pendens filed against the property. Respondent acted as Turner's settlement attorney for the loan. During the same period of time, respondent and Turner each owned an interest in a restaurant (IFS),

which had a loan obligation to Diversified Lending Services, Inc. (DLS). Both respondent and Turner were aware that at the time of the closing of the FSB loan, IFS was in default on the DLS loan. One of the reasons for the FSB loan was to pay off the DLS loan.

Respondent had an ownership interest in and was an officer of the title company that issued the title insurance to FSB for its proposed loan to Turner. The title commitment did not reveal the two judgments against Turner's residence or the notice of lis pendens. On October 27, 1989, respondent disbursed the proceeds of the FSB loan, paying off the two judgment liens against Turner's residence. The payoff of the two judgments did not appear on the HUD I settlement form prepared by respondent. Turner purchased the note securing the loan from DLS to IFS, but respondent did not release the lien against Turner's residence in a timely manner. Respondent did not record FSB's lien against Turner's residence until November 1, 1989. Between October 27th and November 1st, another lien was recorded against Turner's residence.

Turner defaulted on the FSB loan and petitioned for bankruptcy. His residence went into foreclosure, and FSB suffered substantial losses. FSB learned of its position as subordinated lienholder against Turner's residence when it started preparing for a possible foreclosure in March 1990. When FSB inquired to respondent about the defects in title, respondent did not adequately respond to the inquiries.

The Committee found that respondent failed to disclose his personal interest in the transaction to FSB, failed to disclose the judgment liens on the title commitment on the HUD I form, failed to release the DLS

1. The Committee concluded that respondent violated the following Disciplinary Rules governing the Virginia Bar: DR 1–102(A)(4) (conduct involving dishonesty, fraud, deceit, or misrepresentation which reflects adversely on a lawyer's fitness to practice law); DR 5–101(A) (prohibiting accepting employment if the exercise of professional judgment on behalf of the client may be affected by the lawyer's own financial, business, property, or personal interests, except with the consent of the client after full disclosure); DR 5–

105 (prohibiting multiple representations that may impair the independent judgment of the lawyer); and DR 6–101 (requiring promptness in representing a client and reporting pertinent information to a client). The parties agree that variations in wording between Virginia's and the District's Rules are not an impediment to the imposition of reciprocal discipline. See In re Reiner, 561 A.2d 479, 482 (D.C.1989) (per curiam).

lien against Turner's residence in a timely manner, disbursed the FSB loan proceeds before recording the FSB lien, and failed to adequately respond to FSB's inquiries as to the status of the title and the title insurance once FSB's loan to Turner was in default. In imposing a public reprimand, the Committee took into consideration respondent's lack of a prior disciplinary record, his full cooperation in the proceeding, and his agreement to make restitution.

In reciprocal disciplinary cases the level of deference accorded Board recommendations is less than in original proceedings. *Compare* D.C. Bar Rule XI, § 9(g)(1) (in original proceedings the court "shall adopt the recommended disposition of the Board unless to do so would foster a tendency toward inconsistent dispositions for comparable conduct or would otherwise be unwarranted") *with* D.C. Bar Rule XI § 11(f)(2) ("the Court shall impose the identical discipline [imposed in the jurisdiction giving rise to a reciprocal proceeding] unless the attorney demonstrates, or the Court finds ... by clear and convincing evidence, that one or more of the [exceptions to reciprocal discipline] exists."); *In re Powell*, 646 A.2d 340, 343 n. 10 (D.C.1994). Pursuant to D.C. Bar Rule XI, § 11(c), "[r]eciprocal discipline shall be imposed unless the attorney demonstrates, by clear and convincing evidence," that one of five exceptions have been met. Thus, the rule "creates a rebuttable presumption that the discipline will be the same in the District of Columbia as it was in the original disciplining jurisdiction." *In re Zilberberg*, 612 A.2d 832, 834 (D.C.1992) (citing *In re Velasquez*, 507 A.2d 145, 146–47 (D.C. 1986)) (footnote omitted).

The exception applicable to this case is § 11(c)(4), which justifies diverting from the presumed identical discipline if "[t]he misconduct established warrants substantially different discipline in the District of Columbia." Deciding whether to apply the "substantially different discipline" exception is a two-step process. First, we must determine whether the "misconduct in question would not have resulted in the same punishment here as it did in the disciplining jurisdiction." Second, we determine whether "the difference is substantial." *In re Garner*, 576 A.2d 1356, 1357 (D.C.1990) (citations omitted). Regarding the first step, "the question is whether the discipline of the foreign jurisdiction is within the range of sanctions that would be imposed for the same misconduct" in this jurisdiction. *Id.* (citing *In re Hirschberg*, 565 A.2d 610, 614 (D.C. 1989)).

We determine that public censure is not within the range of applicable sanctions that would be imposed in the District for the same misconduct. The Board recommended a more severe sanction because it found that respondent engaged in "[a] series of misrepresentations throughout a transaction, that contributed to serious financial harm to a third party, in order to protect the respondent's financial interest." In making its recommendation, the Board took the mitigating circumstances identified in the Virginia proceeding, including respondent's lack of prior discipline, his cooperation with Virginia disciplinary authorities and his agreement to make restitution, into account in recommending a sanction it considered "on the lowest end of the range ... available in the District of Columbia."

This court has previously imposed suspension in situations involving dishonesty similar to that of respondent. *See, e.g., In re Schneider*, 553 A.2d 206 (D.C.1989) (30–day suspension for falsification of travel expenses on law firm billings); *In re Sandground*, 542 A.2d 1242 (D.C.1988) (per curiam) (three-month suspension for helping divorce client conceal assets in response to discovery requests); *In re Hutchinson*, 534 A.2d 919 (D.C.1987) (en banc) (one-year suspension for false sworn testimony). The Board contends that while respondent's dishonest conduct alone warrants suspension, his violations involving neglect and conflict of interest bolster the suspension. *See, e.g., In re Joyner*, 670 A.2d 1367 (D.C.1996) (30–day suspension for neglect); *In re Ontell*, 593 A.2d 1038 (D.C.1991) (30–day suspension for neglect and misrepresentation); *In re McLain*, 671 A.2d 951 (D.C.1996) (90–day suspension for conflict of interest where respondent engaged in a business transaction with his clients by borrowing money and purchasing a

house from them, without advising them of their differing interests).

The Board relies on *In re Jackson,* 650 A.2d 675 (D.C.1994) (per curiam) and *In re Kennedy,* 542 A.2d 1225 (D.C.1988) for its position that suspension is the proper sanction. The court in *Jackson* suspended the attorney for six months for preparing a client's tax return without documentation to support certain deductions, which caused financial harm to the client. 650 A.2d at 679. The attorney in *Kennedy* was suspended for 90 days for misrepresenting his salary on a home loan application and engaging in the practice of law at a time when he was suspended for nonpayment of dues. 542 A.2d at 1226–27. In light of the above cases, we find that respondent's misconduct would not have resulted in a public censure in the District.[2]

As for the second prong of the inquiry, we note that the 90-day suspension recommended by the Board is, by definition, a more severe sanction than public censure. *In re Mahoney,* 602 A.2d 128, 130 (D.C.1992).

■■■ Respondent contends that a greater sanction is not warranted because the Virginia record was the result of an agreement, not the result of fact-finding after an evidentiary hearing, does not reveal evidence of his intent and is generally insufficient to support an enhanced sanction. We do not require fact-finding where the respondent has stipulated to the facts. This court has previously imposed discipline based on facts stipulated by the parties. *In re McGann,* 666 A.2d 489, 490 (D.C.1995). Respondent's reliance on *Zilberberg, supra,* 612 A.2d 832, for the proposition that evidence of intent is required before a greater sanction can be imposed is misplaced. In *Zilberberg,* this court did not accept the Board's recommendation of an enhanced sanction because the record of the original disciplining jurisdiction, Virginia, did not contain any findings whether Zilberberg's conceded misappropriation

was intentional or the result of mere negligence. *Id.* at 834. Whether misappropriation is intentional or the result of simple negligence is of central importance in determining the sanction imposed. *In re Addams,* 579 A.2d 190, 191 (D.C.1990) (en banc). Contrary to respondent's contention, *Zilberberg* does not require the imposition of identical discipline in every reciprocal discipline case unless the record affirmatively shows whether the misconduct was intentional or the result of simple negligence.

Because we find respondent's misconduct warrants a substantially different discipline in the District of Columbia, it is hereby ordered that respondent is suspended for 90 days, to begin 30 days from the entry of this order pursuant to D.C. Bar Rule XI, § 14(f).

*So ordered.*

---

2. The facts in the case cited by Bar Counsel in support of public censure, *In re Austern,* 524 A.2d 680 (D.C.1987), are sufficiently different from the present circumstances so as not to persuade us that public censure is within the range of possible sanctions. In *In re Austern,* the attorney received public censure for assisting in the closing of a real estate transaction despite

being told by his client that the client's escrow account had insufficient funds to cover the transaction. *Id.* The misconduct in that case, unlike the misconduct in this case, as noted by the Board, did not involve a series of misrepresentations, nor did it redound to the attorney's financial interest.