**In re Andrew M. STEINBERG,
Respondent.**

**A Member of the Bar of the District
of Columbia Court of Appeals.**

**No. 97–BG–1514.**

District of Columbia Court of Appeals.

Submitted Nov. 5, 1998.
Decided Nov. 30, 1998.

---

Before TERRY and STEADMAN, Associate Judges, and BELSON, Senior Judge.

PER CURIAM:

The Virginia State Bar's Fifth District Subcommittee found that respondent had violated a number of the Disciplinary Rules of the Virginia Bar in connection with his retention by a client in a divorce matter. On May 23, 1997, the subcommittee publicly reprimanded respondent with terms, including a $5,000 refund to the client and an additional $1,000 for attorneys' fees incurred. The Office of Bar Counsel for the District of Columbia forwarded a certified copy of the order of public reprimand to this court. We, in turn, entered an order referring the matter to the Board on Professional Responsibility for a recommendation whether identical, greater, or lesser discipline should be imposed as reciprocal discipline, or whether the Board elected to proceed *de novo*, pursuant to D.C. Bar Rule XI, § 11.

In its clear and cogent Report and Recommendation to us, a copy of which is annexed hereto,[1] the Board on Professional Responsibility concludes that respondent's misconduct warrants a substantially different sanction in the District of Columbia under D.C. Bar R. XI, § 11(c)(4), because a public reprimand[2] falls substantially outside the range of sanctions that would have followed if respondent's misconduct had been proven in proceedings in this jurisdiction.[3] The Board recommends that Steinberg be suspended from the practice of law in the District of Columbia for 30 days.

■ The Office of Bar Counsel has advised the court that it supports the Board's Report and Recommendation, and Steinberg has not filed an exception to the Board's recommendation. Where there is no timely opposition to the discipline recommended by the Board, "our standard of review of the Board's recommended sanction is ... especially deferential." *In re Ramacciotti*, 683 A.2d 139, 140 (D.C.1996) (citations omitted); *see also* D.C. Bar R. XI, § 11(f)(1). Accordingly, it is

■ ORDERED that Andrew M. Steinberg, Esquire, is suspended from the practice of law for a period of thirty days. Respondent's attention is called to D.C. Bar R. XI, § 14, including the affidavit requirement

---

1. The Report sets forth in detail respondent's misconduct and the disciplinary rules he was found to have violated, including DR 1–102(A)(4) (conduct involving dishonesty), DR 9–102(B) (handling of client funds), DR 6–101(B), (C) (failure to attend promptly to client's matter and to keep client informed), and DR 2–108 (delivery of client's papers and prompt refund of advance fees).

2. We agree with the Board's conclusion in footnote 3 of its Report that the public reprimand in Virginia by a Virginia Bar subcommittee was the equivalent of a reprimand by the Board under D.C. Bar R. XI, § 3(a)(4). In *In re Cynn*, 655

A.2d 319 (D.C.1995), we simply followed the recommendation of the Board in an unopposed proceeding.

3. For other cases where public reprimands based on negotiated dispositions issued by subcommittees of the Virginia State Bar have been determined to be substantially below the range of sanctions which would have followed had the misconduct occurred in the District of Columbia, see, e.g., *In re Zelloe*, 686 A.2d 1034 (D.C.1996); *In re Drury*, 683 A.2d 465 (D.C.1996); *In re McGann*, 666 A.2d 489, 491 (D.C.1995).

of subsection (g), and to the consequences of not timely complying with the requirements of section 14 set forth in D.C. Bar R. XI, § 16(c).

*So ordered.*

## APPENDIX

### DISTRICT OF COLUMBIA COURT OF APPEALS
### BOARD ON PROFESSIONAL RESPONSIBILITY

In the Matter of ANDREW M. STEINBERG, ESQUIRE, Respondent.

Bar Docket No. 366–97.

### *REPORT AND RECOMMENDATION OF THE BOARD ON PROFESSIONAL RESPONSIBILITY*

This matter is before the Board pursuant to the October 9, 1997 Order of the Court directing us to recommend whether identical, greater or lesser discipline should be imposed as reciprocal discipline on Respondent Andrew M. Steinberg, Esquire in the District of Columbia following the issuance of a public reprimand with terms to Respondent by a Subcommittee of the Virginia State Bar. For the reasons discussed below, we do not recommend the imposition of identical discipline; our recommendation is that Respondent receive a suspension of thirty days.

### *Background*

Respondent, a member of both the Virginia and the District of Columbia Bars, was retained by Mr. James Johns in a divorce matter. Mr. Johns' wife had moved from Virginia to New Mexico with their daughter in August 1994. She filed for divorce in December 1994. By March 1995, Mr. Johns had accepted service of her petition for divorce and had received by mail a proposed settlement agreement from her New Mexico attorney.

On March 28, 1995, Mr. Johns employed Respondent in a written agreement and paid Respondent a $5,000 advance against fees. Respondent told Johns that he would respond to the wife's settlement proposal, hire New Mexico counsel to file a motion to dismiss the divorce proceedings on insufficient residency grounds, and file for divorce in Virginia.

In May 1995, Respondent employed an attorney in New Mexico for the limited purpose of filing a motion to dismiss the petition for divorce on behalf of Mr. Johns. Respondent, however, still had not contacted the wife's New Mexico attorney with regard to the settlement proposal or even notified her counsel that he had been employed. Mr. Johns, who called regularly to check on the status of his case, was assured each time that there were no problems.

On June 9, 1995, Mr. Johns went to Respondent's office and executed a pleading which had been forwarded by his New Mexico counsel. The pleading was captioned Verified Motion to Dismiss Petition for Lack of Jurisdiction. On June 14, 1995, his New Mexico counsel forwarded a copy of his motion to the wife's attorney to allow her to respond before the motion was filed in court.

In the meantime, on Saturday, June 10, 1995, Mr. Johns received a motion for default judgment filed by his wife's attorney in the New Mexico action. On Monday, June 12, 1995, Johns forwarded to Respondent a copy of the motion by facsimile. Respondent told Mr. Johns he would take care of the matter. On June 19, 1995, Mr. Johns informed Respondent that he had received notice that a hearing on the motion had been scheduled for July 13, 1995. Johns promptly forwarded the notice to Respondent who advised Johns that he did not need to appear or be concerned about the matter.

Respondent failed to notify Mr. Johns' New Mexico counsel of the default judgment motion or of the scheduled hearing. As his New Mexico counsel had not yet filed any pleadings in the matter, he was not given notice of the scheduled hearing by the court. On July 13, 1995, no one appeared on Mr. Johns' behalf at the hearing and a default judgment was entered giving the wife sole custody of their child and the child support she requested. Mr. Johns was not granted any visitation with his daughter due to his failure to participate. Mr. Johns did not learn of these events until July 25, 1995 when

his former wife called to inquire about child support payments.

When Mr. Johns called Respondent, Respondent apologized for dropping the ball and promised to correct the matter. Respondent contacted New Mexico counsel, and on August 15, 1995, a motion to set aside the final decree was filed.

On September 18, 1995, Respondent wrote to Mr. Johns' New Mexico counsel, enclosing a copy of a letter he allegedly sent on April 17, 1995 to the wife's New Mexico counsel. A copy of this September 18, 1995 letter and its enclosure was also sent to Mr. Johns. The April 17, 1995 letter contained a counter-offer, but not the one Mr. Johns and Respondent had agreed to make when they discussed possible counter-offers in the spring of 1995. Neither Mr. Johns nor his New Mexico counsel had ever seen the April 17, 1995 letter prior to their receipt of it in September 1995.

On October 13, 1995, Respondent sent a copy of the purported April 17, 1995 letter to the wife's New Mexico counsel. He too had never seen that letter previously nor had he ever been made aware of Respondent's involvement in the case.

On approximately October 30, 1995, Mr. Johns got a call from his former wife informing him that a hearing had been set for November 7, 1995 on his motion to set aside the default judgment. Mr. Johns fired Respondent on November 3, 1995 and hired his New Mexico counsel directly. Mr. Johns and his New Mexico counsel appeared in court on November 7, 1995 and secured several favorable amendments to the final decree of divorce.

In December 1995, Mr. Johns retained Robert Madigan, Esquire, to represent him in dealing with Respondent. Mr. Madigan repeatedly requested Respondent to deliver Mr. Johns' file and his $5,000. Respondent did not release the file and did not refund Mr. Johns' money nor provide an accounting of the funds. On several occasions, Respondent told Mr. Madigan or Madigan's staff that he had sent the file when in fact he had not.

The Subcommittee in the Virginia disciplinary system found that Respondent violated the following Virginia disciplinary rules:
- DR 1–102(A)(4), for engaging in conduct involving dishonesty;
- DR 2–105(A), for not adequately explaining his fees to the client and (B) for not furnishing the basis or rate of his fee upon request of the client;
- DR 2–108, for not taking reasonable steps, upon the termination of representation, for delivering all papers and property to which the client is entitled and not refunding any advance payment of fee that has not been earned.
- DR 6–101(B), for failing to attend promptly to matters undertaken for a client and (C) for failing to keep his client reasonably informed about matters in which the lawyer's services are being rendered.
- DR 9–102(B), for failure to maintain complete records of client funds coming into the possession of the lawyer and failure to deliver to the client funds which the client is entitled to receive.[1]

On May 23, 1997, the Virginia Subcommittee offered Respondent the opportunity to comply with certain terms and conditions to be completed by August 1, 1997, as a predicate to the imposition of a public reprimand with terms. The conditions were:

a) to pay the complainant Mr. Johns $6,000, of which $5,000 was the return of Mr. Johns $5,000 and $1,000 was to reimburse Mr. Johns for legal fees paid to another attorney to resolve the problems caused by Respondent;

b) to prepare and submit to the Subcommittee an outline of the Virginia disciplinary rule regarding the recordkeeping requirements for escrow/trust funds; and

---

1. Respondent was also found to have violated Virginia Disciplinary Rules DR 9–102(A)(1) and (2), DR 9–102(B)(3) and (4) and DR 9–103(A). These rules require Virginia lawyers to place the advance payment of fees by clients in an escrow account and to keep very specific records of such escrowed funds. The disciplinary rules of the District of Columbia regarding the handling of the advance payment of fees are different and Respondent's conduct may not have violated these rules.

c) to submit to a random accounting audit by a Virginia State Bar investigator to determine Respondent's compliance with Canon Nine of the Virginia Code of Professional Responsibility. Respondent complied with the terms set forth above and this matter was closed in the Virginia disciplinary system with a public reprimand.[2]

On October 9, 1997, the Court directed Bar Counsel and Respondent to inform the Board within 30 days as to whether identical or different discipline should be imposed. Bar Counsel recommends that the Court publicly censure Respondent—a sanction which it contends is the functional equivalent of Virginia Bar Subcommittee reprimand. Respondent did not respond to the Court's show cause order and submitted no pleadings.

### Discussion

Before determining whether reciprocal discipline should be imposed, it is first neces-

sary to determine *what* discipline is reciprocal—i.e., what sanction in the District of Columbia's disciplinary system is equivalent to the public reprimand with terms issued to Respondent by the Virginia Bar's Fifth District Subcommittee? Bar Counsel contends that Respondent's public reprimand in Virginia is functionally identical to a public censure here. (*See* Statement of Bar Counsel, p. 9). We disagree and believe that a public reprimand by a Virginia Bar Subcommittee is equivalent to a public reprimand by the Board under our system. *In re Arif,* Bar Docket No. 27–97 (BPR Apr. 15, 1997); *In re Manning,* Bar Docket No. 494–95 (BPR Oct. 18, 1995); *see In re McGann,* 666 A.2d 489, 491 n. 1 (D.C.1995).[3]

Reciprocal discipline should be imposed unless there is clear and convincing evidence that one of the enumerated exceptions in § 11(c) of Rule XI applies.[4] *In re Gentile,*

---

**2.** In the Virginia disciplinary system, a Subcommittee has the authority to issue a private or public reprimand, with or without terms, as long as the Subcommittee's vote is unanimous and has the concurrence of Bar Counsel and the attorney. An attorney's failure to comply with the terms set by the Subcommittee not infrequently involves certification of the matter back to the Virginia State Bar Disciplinary Board. *See* Rules of the Supreme Ct. of Va., Pt. 6, § IV, ¶ 13, B.(5)(c)(ii)(1997).

**3.** There has been some confusion recently as to what sanction in the District of Columbia is reciprocal to a public reprimand in Virginia. In this matter and in *In re Zelloe,* 686 A.2d 1034 (D.C.1996), Bar Counsel argued that the reciprocal discipline of a Virginia public reprimand is a public censure in the District of Columbia. In *In re McGann, supra,* Bar Counsel argued that the reciprocal discipline of a public reprimand in Virginia is a public reprimand.

We believe the determination of what is the reciprocal discipline for a public reprimand in Virginia requires an additional factor—who issued or affirmed the public reprimand. If the public reprimand was issued or affirmed by the Supreme Court of Virginia, then the reciprocal discipline in this jurisdiction (assuming reciprocal discipline is appropriate) would be a public reprimand by the District of Columbia Court of Appeals under the rationale that even if original sanction is not one available under our Rule XI, § 3(a), identical discipline might still be imposed so long as the original sanction is "functionally equivalent to one that we might have imposed had the case arisen before us in the first instance." *In re Robertson,* 618 A.2d 720, 726

(D.C.1993), quoting *In re Coury,* 526 A.2d 25, 25 (D.C.1987). Here, the functional equivalent of a Court ordered public reprimand in Virginia would be a § 3(a)(3), "censure by the court."

However, where the public reprimand is issued by the Virginia State Bar Disciplinary Board or one of its Subcommittees, we believe that reciprocal discipline here would be a Board reprimand under § 3(a)(4). *See In re Arif, supra,* (Board order imposing public reprimand as reciprocal discipline based on Virginia Subcommittee's public reprimand); *In re Manning, supra; In re Tuttle,* Bar Docket No. 194–91 (Feb. 24, 1992) (same); *see also In re McGann, supra.*

Having said all of the above, we recognize that *In re Cynn,* 655 A.2d at 320, is contrary to the extent that the public reprimand there was issued by the Virginia State Disciplinary Board, but the "identical" reciprocal discipline, namely a public reprimand, was ordered by this Court. *Id.* at 320. We believe that the order in *Cynn* by this Court was caused by the current confusion described above.

**4.** Section 11(c)'s exceptions are:
 (1) The procedure elsewhere was so lacking in notice or opportunity to be heard as to constitute a deprivation of due process; or
 (2) There was such an infirmity of proof establishing the misconduct as to give rise to the clear conviction that the Court could not, consistently with its duty, accept as final the conclusion on that subject; or
 (3) The imposition of the same discipline by the Court would result in grave injustice; or

706 A.2d 27, 28 (D.C.1998); *In re Gardner,* 650 A.2d 693, 695 (D.C.1994). There is a rebuttable presumption under § 11(c) that the discipline will be the same in the District of Columbia as it was in the original jurisdiction. *Id.; In re Jones,* 686 A.2d 560 (D.C. 1996).

Exceptions (c)(1) through (c)(3) are not applicable and exception (c)(5) barely so.[5] The issue here is exception (c)(4)—whether Respondent's misconduct warrants substantially different discipline in the District of Columbia. Stated differently, the issue is whether a public reprimand by the Board falls within the range of sanctions that would follow if Respondent's misconduct had been proven in an original proceeding here. In reviewing the precedent here, it is clear that a public reprimand falls outside the range of sanctions for the types of violations committed by Respondent and the difference is substantial. *In re Zelloe,* 686 A.2d at 1036; *In re Garner,* 576 A.2d 1356 (D.C.1990).[6] We were unable to find any case in this jurisdiction where an attorney has been issued a public reprimand where that attorney was found to have (1) neglected his client's case; (2) been dishonest with the client; (3) been dishonest with the client's new counsel; (4) refused to turn over the client's file to successor counsel; and (5) refused to return to the client unearned fees which the client had been demanding for a year and one-half. The inappropriateness of a public reprimand is even clearer in light of Respondent's instance of prior discipline.

In determining that Respondent's misconduct in Virginia warrants substantially differ-

ent discipline in the District of Columbia, we have taken into consideration that it is possible to impose a greater sanction here than was imposed by the foreign jurisdiction. *In re Drury,* 683 A.2d 465 (D.C.1996) (*Drury II* ); *In re Dietz,* 653 A.2d 854 (D.C.1995).

Were this matter solely "a first instance of neglect," the sanction warranted might only be a reprimand or censure. *In re Reback,* 513 A.2d 226, 232 (D.C.1986) (*en banc* ). However, once Respondent's dishonesty violation and his other violations are factored in, the range of sanctions clearly indicates that a suspension of six months or less be imposed. For example, in *Reback, supra,* after the attorney's dishonesty was considered along with the neglect in determining the appropriate sanction, a six-month suspension was imposed.

In this jurisdiction, cases involving violations of multiple disciplinary rules similar to those violated here generally bring suspensions of at least 30 days and often times for a longer period. *See In re Bernstein,* 707 A.2d 371 (D.C.1998) (30–day suspension for neglect, failure to keep client reasonably informed, and failure to surrender papers and property to which the client was entitled); *In re Sumner,* 665 A.2d 986 (D.C.1995) (30–day suspension for neglect and failure to return unearned fee); *In re Dobson,* 653 A.2d 871 (D.C.1995) (reciprocal discipline increased from six months to two years with fitness for multiple instances of neglect, dishonesty, failure to return client's file, and failure to communicate with client; and attorney failed to cooperate with disciplinary counsel, failed to notify Bar Counsel of his state suspension, and had record of prior discipline); *In re*

---

(4) The misconduct established warrants substantially different discipline in the District of Columbia; or

(5) The misconduct elsewhere does not constitute misconduct in the District of Columbia.

**5.** Exception (5) addresses whether the misconduct in the other jurisdiction would be misconduct in the District of Columbia. It is noted that a couple of the Virginia disciplinary violations are not violations here. For example, the rule requiring special accounting procedures for trust funds (DR 9–102(A)(1)) and the procedures for handling the advanced payment of funds (DR 9–103(A)) do not exist in this jurisdiction. We find,

however, that these violations are not significant to impact our decision in light of all the other serious violations which Respondent has been found to have committed.

**6.** This matter is not the first instance where public reprimands issued by Subcommittees of the Virginia State Bar based on negotiated dispositions have been determined to be substantially below the range of sanctions which would have followed had the misconduct occurred in the District of Columbia. See, e.g., *In re Zelloe,* supra; *In re Drury,* 683 A.2d 465 (D.C.1996); *In re McGann, supra,* 666 A.2d at 491.

 

*Dietz,* 633 A.2d 850 (D.C.1993) (30–day suspension for neglect, failure to keep client reasonably informed, failure to return unearned fees, and interfering with the administration of justice); *In re Foster,* 581 A.2d 389 (D.C.1990) (30–day suspension for neglect, intentional failure to pursue client's lawful objectives, and to carry out a contract of employment (but no dishonesty) with a prior public censure); *In re Peek,* 565 A.2d 627, 631 (D.C.1989) (four-month suspension for neglect and dishonesty, coupled with prior discipline, two months of suspension stayed with probation due to significant mitigating factors); *In re Landesberg,* 518 A.2d 96 (D.C.1986) (60–day suspension for neglect of an appeal from an adverse paternity determination, misrepresentation to client, failing to return files and keeping an unearned legal fee).[7]

### *RECOMMENDATION*

It is the Boards' view that, under all the circumstances, Respondent's misconduct warrants a sanction substantially different than a public reprimand and that a 30–day suspension is appropriate. The Board recommends that the District of Columbia Court of Appeals issue an order suspending Respondent from the practice of law for a period of thirty days.

BOARD ON PROFESSIONAL RESPONSIBILITY

By:
/s_____
 Paul L. Knight

Dated: March 11, 1998

All members of the Board concur in this Report and Recommendation, except Ms. Zumas, who did not participate.

---

**7.** In *In re Weintraub,* 692 A.2d 918 (D.C.1997) a recent reciprocal discipline case involving similar violations, the identical discipline of a suspension for 60 days was ordered here for two instances of neglect, failure to keep the client informed and dishonesty.