**In re Michael J. BEATTIE,
Respondent.**

**A Member of the Bar of the District
of Columbia Court of Appeals.**

**No. 06–BG–345.**

District of Columbia Court of Appeals.

Decided Aug. 23, 2007.

Before KRAMER and THOMPSON, Associate Judges, and NEBEKER, Senior Judge.

PER CURIAM:

Respondent, Michael J. Beattie, a member of the bar of this court and the Commonwealth of Virginia,[1] was suspended for 60–days by the Virginia State Bar Disciplinary Board ("Virginia Board") for the period of August 24, 2005, through October 24, 2005. The Virginia Board found, based upon a stipulation entered into by respondent, that respondent violated Virginia Rules of Professional Conduct 3.3(a)(1) (false statement to a tribunal), 3.3(a)(4) (offer of evidence known to be false), 3.3(c) (failure to inform a tribunal of all material facts in an *ex parte* proceeding), and 3.5(f) (conduct intended to disrupt a tribunal). The findings stemmed from respondent's representation of a client in an employment discrimination matter before the United States District Court for the Eastern District of Virginia, Newport News Division.[2]

---

1. Respondent is also a member of the United States Courts of Appeals for the Fourth, Eleventh and District of Columbia Circuits and, the United States District Court for the Eastern District of Virginia. Respondent was indefinitely suspended by the District Court for the Eastern District of Virginia on August 13, 2003, and the suspension was in effect on May 26, 2006.

2. The Virginia Board found there was a mitigating factor that respondent suffered from an impairment that affected his judgment and ability to understand the significance of the proceeding and that respondent, subsequently, gained control over that impairment.

Respondent promptly notified D.C. Bar Counsel of his suspension from the Virginia Bar and complied with Bar Counsel's instruction to notify all clients, judges and adverse parties of his suspension. Upon the request of Bar Counsel, we entered an interim suspension on April 26, 2006. Respondent filed a motion to set aside the suspension, which was opposed by Bar Counsel. After Bar Counsel filed the opposition, respondent filed new affidavits and Bar Counsel submitted a letter on May 23, 2006, that it no longer opposed lifting the suspension. As a result, we issued an order on June 26, 2006, granting respondent's motion lifting the suspension without prejudice to the authority of the Board on Professional Responsibility ("Board") and referred the matter to the Board to recommend whether to impose discipline different from or more substantial than ordered in Virginia.[3] The Board issued a report and recommendation finding that respondent should receive reciprocal discipline of a 60–day suspension, however, the Board addressed several factors and concluded that the suspension should be stayed in favor of a 60–day period of unsupervised probation,[4] and as a condition of probation, respondent be directed to inform Bar Counsel of any disciplinary complaint during the period of probation.

Because of the rebuttable presumption favoring identical reciprocal discipline, see *In re Goldsborough*, 654 A.2d 1285 (D.C. 1995), and considering the heightened deference this court gives to the Board's recommendation in cases such as this where no exceptions are filed, see *In re Delaney*, 697 A.2d 1212, 1214 (D.C.1997), or in this instance where the exceptions have been withdrawn or waived,[5] we adopt the Board's recommendation. We find substantial support in the record for the Board's findings, and, accordingly, we accept them. See D.C. Bar R. XI, § 11(f)(1). We also agree that a 60–day suspension should be stayed in favor of a 60–day unsupervised probationary sanction in this case is not inconsistent with the sanction imposed by the original state. *See, e.g., In re Goldberg*, supra note 4. Accordingly, it is

ORDERED that Michael J. Beattie, Esquire, be and hereby is suspended for 60–days, but that the suspension shall be stayed in favor of a 60–day period of unsupervised probation. During this period of probation respondent shall promptly inform Bar Counsel of any disciplinary complaint during the period of probation.

*So ordered.*

### REPORT AND RECOMMENDATION OF THE BOARD ON PROFESSIONAL RESPONSIBILITY

This reciprocal discipline matter is based upon an order of the Virginia State

---

3. We note that respondent has a second bar matter before this court, *In re Beattie*, No. 07–BG–197, and this court imposed an interim suspension in that matter on April 10, 2007.

4. The Board reached its conclusion finding that respondent already observed two 60–day suspension periods in the District of Columbia for the periods of August 24–October 24, 2005, and April 26–June 26, 2006, based upon his actions in Virginia. The Board determined that issuance of a third 60–day suspension would consequently "increase the punishment far beyond that intended by the original state and far beyond the degree of discipline warranted." *In re Goldberg*, 460 A.2d 982, 985 (D.C.1983).

5. Initially, both Bar Counsel and respondent filed exceptions to the Board's report and recommendation. Bar Counsel subsequently withdrew the exception and respondent failed, after being repeatedly ordered by the court, to file a brief. Having failed to comply with this court's orders and submit a brief supporting his exceptions, respondent's exceptions are deemed to be waived and this matter has been decided by this panel as an uncontested matter.

Bar Disciplinary Board ("Virginia Board") ordering Respondent suspended for the 60–day period from August 24, 2005 through October 24, 2005. Bar Counsel, in its statement to the Board, urges that a 60–day suspension be imposed as reciprocal discipline identical to the Virginia sanction and, based upon its receipt of an "affidavit, pursuant to D.C. Bar R. XI, § 14, and a *Goldberg* affidavit," states that it "does not oppose *nunc pro tunc* treatment in this matter." Statement of Bar Counsel at 7 n.5. Respondent has filed no response to the Statement of Bar Counsel.

We agree that a 60–day suspension is an appropriate reciprocal sanction for the misconduct established in the Virginia disciplinary proceeding and therefore recommend that the Court order Respondent suspended from the practice of law in the District of Columbia for 60 days. In view of (1) Respondent's fulfillment of the two conditions set forth in *In re Goldberg,* 460 A.2d 982 (D.C.1983) for cognizable self-suspension in reciprocal matters, (2) the almost eight-month delay between the time Respondent notified Bar Counsel of his Virginia suspension and Bar Counsel's bringing that suspension to the Court's attention, (3) Bar Counsel's statement that it does not object to *nunc pro tunc* treatment and (4) our conclusion that commencement of a 60–day suspension at the time of the Court's final disposition of this matter would, in the circumstances in this matter, impose unwarranted, multiple sanctions on Respondent, we also recommend that the 60–day period of suspension be stayed in favor of a 60–day period of unsupervised probation.

1. We accept the uncontested statements of fact in affidavits Respondent filed with the Court on May 22, 2006 as established in this case by clear and convincing evidence.

## I. THE FACTS

Respondent is a member of both the District of Columbia Bar (Bar Number 450873), having been admitted by motion on May 3, 1996, and of the Virginia Bar. He also is admitted to practice in the United States District Courts for the Eastern District of Virginia and the District of Columbia, as well as in the United States Courts of Appeals for the Fourth, Eleventh and District of Columbia Circuits.

Respondent has no disciplinary history in the District of Columbia. Bar Counsel has reported, however, that Respondent was indefinitely suspended from practice in the District Court for the Eastern District of Virginia on August 13, 2003, which suspension was still in effect on May 26, 2006. *See* Statement of Bar Counsel at 1.

### A. Prior District of Columbia Proceedings in This Matter

Respondent "promptly notified the D.C. Bar Counsel on August 25, 2005 of [his] suspension from the Virginia Bar." *See* "Goldberg Affidavit" filed with the District of Columbia Court of Appeals (the "Court") on May 22, 2006, which is reproduced in the Appendix to this Report. He also at that time "complied with [Bar Counsel's] instructions" and "promptly notified all clients, judges and adverse parties of [his] suspension, via certified mail, return receipt" requested. *See* "Affidavit" filed with the Court on May 22, 2006, which also is reproduced in the Appendix to this Report. During the 60–day period of his suspension—from August 24, 2005 to October 24, 2005—Respondent "did not practice law in Virginia or the District of Columbia." *Id.*[1]

Based on these statements, Bar Counsel withdrew its previous opposition to a motion to set aside the interim suspension in this matter. *See infra,* at 973–74.

Bar Counsel, on April 11, 2006—almost eight months after Respondent had notified him of the Virginia suspension, and almost six months after the Virginia suspension period ended—filed with the Court a certified copy of the disciplinary order of the Virginia Board with a proposed order suspending Respondent "from the practice of law in the District of Columbia pending final disposition of this proceeding." The Court, on April 26, 2006, ordered the *interim* suspension Bar Counsel had requested.

Respondent, on May 9, 2006, filed a "Motion to Set Aside Suspension," to which he attached documents that he described as, a "Show Cause, rule 14(g) affidavit and *Goldberg* affidavit." Bar Counsel opposed the motion on the ground that Respondent had "not yet submitted affidavits sufficiently demonstrating his compliance with D.C. Bar Rule XI, § 14(g) or *In re Goldberg.*" *See* Opposition of Bar Counsel to Respondent's Motion to Set Aside Suspension at 1–2. Index of Record. at Tab 6.

The deficiencies that Bar Counsel specified were as follows:

(a) Respondent's proffered *Goldberg* affidavit is deficient because, *inter alia*, the affidavit is not properly sworn or notarized, and Respondent did not promptly notify Bar Counsel that the United States District Court for the Eastern District of Virginia had indefinitely suspended him from practice before the court on August 13, 2003; and

(b) Respondent's proffered Section 14(g) affidavit is deficient because, *inter alia*, the affidavit is not properly sworn or notarized; the Section 14(g) affidavit only addresses the time period of Respondent's suspension in Virginia and does not address whether Respondent has satisfied the Rule's requirements during his current interim suspension in the District of Columbia; and the Section 14(g) affidavit omits at least one jurisdiction where Respondent is admitted to practice, the United States Court of Appeals for the Eleventh Circuit.

Opposition of Bar Counsel to Respondent's Motion to Set Aside Suspension at 2.[2]

Five days after Bar Counsel's opposition was filed, on May 22, 2006, Respondent filed new affidavits. *See* Index of Record, at Tab 7.[3] Respondent's May 22 submissions are sworn and, presumably in an effort to deal with Bar Counsel's objection that his previous "Section 14(g) affidavit ... does not address whether Respondent has satisfied the Rule's requirements during his current interim suspension in the District of Columbia," Respondent added to his "Section 14(g) affidavit" the statement "I swear that I am not currently practice [*sic*] law in the District of Columbia during the interim suspension." Based upon "the representations in those [May 22 Affidavits]," Bar Counsel advised the Court that it "does not oppose the lifting of the interim suspension in this case." *See* Letter dated May 23, 2006 from Bar Counsel to Garland Pinkston, Clerk, District of Columbia Court of Appeals. Index of Record, at Tab 8.[4]

The Court, on June 26, 2006, entered the following Order:

On consideration of respondent's motion to set aside suspension directed by

---

2. Bar Counsel's opposition cited no authority in support of its objections.

3. As noted above, in the Appendix to this Report, the two affidavits Respondent filed with the Court on May 22, 2006 are reproduced in full.

4. Bar Counsel's May 23, 2006 letter is silent with respect to Respondent's request for *nunc pro tunc* treatment.

this Court's order dated April 26, 2006, which temporarily suspended respondent from the practice of law in the District of Columbia pursuant to D.C. Bar Rule XI, § 11(d) ...; respondent's request for *nunc pro tunc* treatment; respondent's D.C. Bar Rule XI, § 14 affidavit; Bar Counsel's opposition; respondent's amended affidavit, and the letter from Bar Counsel dated May 23, 2006, advising the court that Bar Counsel does not oppose the lifting of respondent's interim suspension, it is

ORDERED that respondent's motion to set aside suspension by this Court's order dated April 26, 2006 is granted and the automatic interim suspension under Rule XI, § 11(d) is lifted, without prejudice to the authority of the Board ... to recommend or the Court to impose, discipline different from or more substantial than that ordered in Virginia, as final discipline in the present proceeding. It is

FURTHER ORDERED that respondent's request for *nunc pro tunc* treatment is denied without prejudice to respondent raising the issue before the Board.... [5]

## B. *Course of Virginia Disciplinary Proceedings*

The disciplinary order of the Virginia Board was based upon an agreed disposition proposed by both the Virginia State Bar and Respondent that was "presented by teleconference for approval of the Virginia Board" on August 24, 2005. The Virginia Board's order, though formally entered on August 26, 2005, directs that Respondent's license "to practice law in the Commonwealth of Virginia be ... suspended for sixty (60) days, effective August 24,

2005," the date of the hearing. *See* Order of Suspension of 60 days, appended as Attachment B to the Statement of Bar Counsel (emphasis added). Respondent was represented by counsel. The Virginia Board recited the facts upon which the Order was based and described the nature of Respondent's misconduct as violations of Virginia Rules of Professional Conduct 3.3(a)(1) (false statement to a tribunal), 3.3(a)(4) (offer of evidence known to be false), 3.3(c) (failure to inform a tribunal of all material facts in an *ex parte* proceeding) and 3.5(f) (conduct intended to disrupt a tribunal).

## C. *Misconduct Established in the Virginia Proceedings*

The misconduct found in the Virginia disciplinary proceedings arose in connection with Respondent's legal representation of Joyce Spangler in an employment discrimination suit against Colonial Ophthalmology in the United States District Court for the Eastern District of Virginia, Newport News Division. Respondent filed the suit on September 5, 2002. On September 27, Ray Hogge, a lawyer who had been retained by Colonial to defend the suit, left a voice mail message for Respondent with his name, his client's name, and his telephone number. Three days later, Hogge wrote Respondent a letter confirming his representation of Colonial and offering to waive service of process. A little over a month later, on November 4, 2002, Hogge left another voice mail message for Respondent, this time requesting that Respondent agree to an extension of time for defendant's response to the complaint and asking if there was a settlement demand.

Respondent replied to none of those communications, but on November 7, 2002,

---

**5.** Respondent did not explicitly request *nunc pro tunc* treatment in his motion, but such a request was implicit in his statements in the

two affidavits that were filed "in support of nunc pro tunc treatment." *See* Appendix.

he moved for a default judgment against Colonial. Eleven days later, on November 18, 2002, Respondent appeared before the court on his motion, without notifying either Hogge or Colonial. He had certified in his motion that "[a] copy has not been sent to opposing counsel because no attorney has entered an appearance in this case."

At the start of the November 18 hearing, the court questioned Respondent regarding his contact with any counsel for Colonial or his knowledge of any representation. Respondent answered that he had received two voice mail messages from a lawyer regarding the case, but that he did not know who the person was. He told the court that the last call was about four weeks before the hearing.

The court entered a default judgment against Colonial on December 18, 2002, awarding damages, attorney's fees and costs totaling $37,639.82. Five days later, Hogge faxed Respondent requesting him to sign an agreed order setting aside the default judgment. Respondent refused to sign the proposed order, and Colonial filed a motion for relief from default judgment. The court set the matter for hearing on May 21, 2003, but Respondent failed to appear.[6] The court then issued a show cause order for Respondent to appear on July 2, 2003, and on August 13, 2003, the court entered an order vacating the default judgment, indefinitely suspending Respondent from practice before the court and ordering him to pay a sanction of $5,000. The court found that Respondent had

6. On May 23, 2003, Respondent filed a letter stating that he had been before a United States District Court in Alexandria on May 21, 2003.

7. Respondent thereafter agreed to pay the sanction in installments and, at the time of the Virginia disciplinary proceeding, he was current in his sanctions payments.

made material misrepresentations to the Court.

Respondent failed to pay the sanction. The court therefore issued a show cause order, on which a hearing was held on March 10, 2004 before District Judge Robert G. Doumar. Respondent was held in contempt for his conduct during that hearing, which included telling the judge, "you need to perhaps go to anger management classes."[7]

The Virginia Board found, as a mitigating factor, that Respondent, during the relevant period, was suffering from an impairment which affected both his judgment and his ability to understand the significance of the proceedings. The Virginia Board further found that Respondent is now controlling his disability through "changes in his lifestyle and appropriate professional treatment." The Virginia Board's order also observed that "[t]he parties ... note that Respondent ha[d] ... served a two year suspension from the United States District Court for the Eastern District of Virginia."

## II. ANALYSIS

1. *Exceptions to Reciprocal Discipline— D.C. Bar R. XI, § 11(c)*

Identical reciprocal discipline is imposed in reciprocal cases, unless the respondent demonstrates, by clear and convincing evidence, that one or more of the five exceptions set forth in D.C. Bar R. XI, § 11(c) apply. D.C. Bar R. XI, § 11(f); *In re Zilberberg*, 612 A.2d 832, 834 (D.C. 1992).[8] Respondent has proffered no evi-

8. D.C. Bar R. XI, § 11(c) provides that "[r]eciprocal discipline shall be imposed unless the attorney demonstrates ... that:

(1) The procedure elsewhere was so lacking in notice or opportunity to be heard as to constitute a deprivation of due process; or

(2) There was such infirmity of proof establishing the misconduct as to give rise to

dence that he was deprived of due process, and inasmuch as his Virginia disciplinary proceeding was conducted in accordance with a statement of facts and agreed disposition to which Respondent subscribed, the face of the record does not suggest that Respondent was deprived of due process. Nor has any infirmity of proof been demonstrated. Consequently, no issue arises in this matter under exceptions (1) or (2) of D.C. Bar R. XI, § 11(c).

The misconduct found by the Virginia disciplinary system appears on its face to be misconduct under the District of Columbia Rules of Professional Conduct.[9] Virginia Rules 3.3(a)(1), 3.3(a)(4) and 3.5(f) are either identical to or not materially different from the corresponding District of Columbia rules.[10] Virginia Rule 3.3(c) directs lawyers, *in ex parte* proceedings, to "inform the tribunal of all material facts known to the lawyer which will enable the tribunal to make an informed decision, whether or not the facts are adverse." That rule has no analog in the District rules, but Respondent's misconduct was more than a simple violation of that rule. He engaged in conduct that involved dishonesty, deceit and misrepresentation, as

the Virginia Board found in concluding he violated Virginia Rule 3.3(a)(1). That conduct would constitute a violation of District of Columbia Rule 8.4(c) (conduct involving dishonesty, fraud, deceit or misrepresentation).[11] Exception (5) in D.C. Bar R. XI, § 11(c) thus has no application in this matter.

The two remaining exceptions deal with the sanction that should be imposed in District of Columbia reciprocal proceedings. Exception (3) provides that the discipline imposed by the original jurisdiction need not be reciprocated in the District of Columbia if "imposition of the same discipline by the Court would result in grave injustice." Exception (4), on the other hand, looks to the "misconduct established" in the original jurisdiction and provides that the sanction imposed need not be imposed here if that misconduct "warrants substantially different discipline in the District of Columbia." The 60-day suspension imposed by the Virginia Board raises no serious question under exception (4) in D.C. Bar R. XI, § 11(c), since nothing suggests that the District of Columbia would have imposed a substantially differ-

---

the clear conviction that the Court could not, consistently with its duty, accept as final the conclusion on that subject; or

   (3) The imposition of the same discipline by the Court would result in grave injustice; or

   (4) The misconduct established warrants substantially different discipline in the District of Columbia; or

   (5) The misconduct elsewhere does not constitute misconduct in the District of Columbia.

9. Bar Counsel's alternative reliance on its interpretation of Rule 8.5 (*see* Statement of Bar Counsel at 6 n.3) thus refers to an issue that is not present in this matter. *See In re Gansler,* 889 A.2d 285, 290 n. 5 (D.C.2005), (*held:* consideration of "Bar Counsel's novel argument that the choice of law principles of Rule 8.5 ... apply in reciprocal discipline proceedings and foreclose *any* inquiry whether Gan-

sler's conduct would amount to misconduct in this jurisdiction" left to another case where reciprocal case presented no issue as to the exception in D.C. Bar § 11(c)(5)) (emphasis in original).

10. Virginia Rule 3.1(a)(1) forbids lawyers from "knowingly mak[ing] a false statement to a tribunal." Its District of Columbia counterpart, D.C. Rule 3.3(a)(1), prohibits "knowingly making a false statement of *material* fact or *law* to a tribunal." (emphasis supplied). Respondent's false statements to the district court in this matter were unquestionably material to the relief he was seeking.

11. Bar Counsel also suggests that Respondent's Virginia misconduct would violate D.C. Rule 8.4(d) (conduct that seriously interferes with the administration of justice). *See* Statement of Bar Counsel at 6, n. 4.

ent sanction for the same misconduct in a case originating here. *See, e.g., In re Zelloe,* 686 A.2d 1034, 1036 (D.C.1996).

Moreover, a suspension for that length of time, if only Respondent's misconduct is considered, would ordinarily raise no substantial issue as a "grave injustice" under D.C. Bar R. XI, § 11(c)(3). The Court has held, in *In re Goldberg,* 460 A.2d 982 (D.C. 1983), however, that requiring a respondent in a reciprocal matter to undergo another period of suspension after he had previously given Bar Counsel prompt notice of his "professional disciplinary action in another jurisdiction … and … voluntarily refrain[ed] from practicing law in the District of Columbia during the suspension period in the original jurisdiction" would constitute "punishment far beyond that intended by the original state and far beyond the degree of discipline warranted." *See Goldberg,* 460 A.2d at 985.

This matter thus presents the question whether "punishment … far beyond the degree of discipline warranted" amounts to a "grave injustice." *Id.* We have concluded, however, that Respondent has not made a sufficient showing to call for application of the "grave injustice" exception in this matter. Respondent, after all, bears the burden under D.C. Bar R. XI, § 11(c)(3) of establishing that "imposition of the same discipline by the Court would result in grave injustice." As we discuss below, the affidavits he has filed, while they state sufficient facts to satisfy the second prong of the *Goldberg* rule, do not provide any basis for weighing the personal hardship Respondent would suffer from another 60–day suspension period. Certainly, Respondent's refraining from the practice of law in the District of Columbia and his compliance with the notice requirements of D.C. Bar R. XI, § 14 could impair relationships with some or all of his clients. But the record provides no reliable basis for determining the extent to which that potential harm would be realized. Speculation is not an appropriate basis for applying the exceptions in D.C. Bar R. XI, § 11(c), but in the end, speculation is all we have concerning the full effect that a prospective 60–day suspension would have on Respondent's ability to practice law in the District of Columbia.

### 2. *Recommended Disposition*

■ Although he has not sufficiently demonstrated that another suspension would be a "grave injustice," Respondent is nonetheless entitled to "[e]lementary fairness" in this matter. *See In re Slosberg,* 650 A.2d 1329, 1332 (D.C.1994). He should not effectively be sanctioned three times, or even twice, in the District of Columbia for a single instance of misconduct. That simple, common-sense rule is the central premise underlying the Court's decision in *Goldberg.*

The reasoning in *Goldberg* begins with the observation that, when the Court imposes a short suspension as reciprocal discipline based on a suspension ordered in another jurisdiction, the two suspension periods often do not run concurrently. In fact, in many cases the two suspension periods "never even intersect." *Id.* at 985. As we pointed out above, the Court held that, if it could "never order that [the District of Columbia suspension] run during the same period as in the state where the conduct occurred," the reciprocal District of Columbia suspension "would tend to increase the punishment far beyond that intended by the original state and far beyond the degree of discipline warranted." *Id.*

To avoid that unintended—and manifestly unfair—result in reciprocal discipline matters, the Court announced the following two-pronged rule ("the *Goldberg* rule"), to which we referred above:

> If the attorney "promptly" notifies Bar Counsel of any professional disciplinary

action in another jurisdiction ... and ... voluntarily refrains from practicing law in the District of Columbia during the suspension period in the original jurisdiction, then there will probably be no reason to aggravate the discipline by making the District of Columbia suspension wholly or partially consecutive to that imposed elsewhere.

*Id.*

Although the Court cautioned against a conclusion that "reciprocal suspensions must always be concurrent," it nonetheless anticipated that "concurrency will be the norm." *Id.* at 985. The only circumstances the opinion hypothesized that would justify not ordering the two suspension periods to run concurrently were "[1] if the attorney unreasonably delays in notifying Bar Counsel that he or she has been disciplined in another state, or [2] if the attorney engages in the practice of law in the District of Columbia while suspended elsewhere." *Id.*[12]

Respondent fulfilled both prongs of the *Goldberg* rule. He even notified Bar Counsel of his Virginia suspension before the Virginia Board's formal order was entered. Moreover, for the next 60 days he refrained from practicing law in the District of Columbia, as well as in Virginia. On October 24, 2005, Respondent therefore was free to resume practice in both jurisdictions. Three letters bearing the date "May 5, 2006" that he filed with the Court on May 8, 2006 suggest that he has, in fact, participated in at least one court case in the District of Columbia, after his August–October 2005 suspension ended.[13]

The interim suspension order the Court entered on April 26, 2006 at the request of Bar Counsel directed Respondent, who was six months into reestablishing his District of Columbia practice, to discontinue that practice again.[14] Compliance with

**12.** Implicit in the *Goldberg* decision is that an affidavit filed long after the passage of the common period during which the foreign suspension and the respondent's voluntary cessation of practice in the District of Columbia occurred would be sufficient to establish the two prerequisites in the *Goldberg* rule. In fact, the issue of retroactivity was presented to the Court in *Goldberg* by a representation in the respondent's brief "that he voluntarily refrained from practicing in the District of Columbia during the period of his Maryland suspension." *Goldberg*, 460 A.2d at 985. The Court, noting that "there was no evidence on this point before the Board," remanded the record to the Board for "factual findings on this question." *Id.* at 986. Thus, in the *Goldberg* case itself, the respondent's self-suspension during his foreign suspension was not documented until long after the concurrent suspension period ended.

**13.** Those three letters and the unsworn affidavit Respondent filed with the Court on May 7, 2006 are in the record. Index of Record at Tab 5. They were addressed to a judge who sits on the United States District Court for the District of Columbia, an assistant United States Attorney in the District and a person,

who appears to be Respondent's client, living in Court Oak Hill, Virginia.

In addition, Respondent's filings with the Court reveal that he had clients with matters pending in the District of Columbia in August 2005. Presumably, he resumed his participation in at least some of those matters, once the period of his Virginia suspension and the voluntary hiatus in his District of Columbia practice came to an end in October 2005.

**14.** That substantial delay between Respondent's notification of Bar Counsel regarding a suspension in another jurisdiction and Bar Counsel's notice to the Court is not something the Court has thought likely to happen in the typical reciprocal case. In its opinion in *In re Soininen*, 853 A.2d 712 (D.C.2004), the Court explained the typical process as follows:

> [When] the attorney promptly notifies Bar Counsel of the suspension in the foreign jurisdiction and agrees to refrain from practicing in the District during the period that the foreign suspension is in effect[,] ... Bar Counsel promptly notifies the court and requests an order of interim suspension pursuant to D.C. Bar R. XI, § 11(d), and such an order is routinely issued without significant delay.

D.C. Bar R. XI, § 14 demanded that he withdraw as counsel from all pending matters and promptly notify all clients and opposing parties of his new suspension, the duration of which could not be known, and return to his clients their files and property. D.C. Bar R. XI, §§ 14(a)-(d). The Court's interim suspension order thus was, in actuality, a second District of Columbia sanction for his Virginia misconduct. This second suspension, however, was not for a specific 60–day period, but for a duration that depended entirely on the dockets of the Court and the Board.

Respondent's motion to set the Court's April 26, 2006 interim suspension order aside was granted, and the Court lifted the interim suspension on June 26, 2006, which happens to be exactly 60 days after it was ordered. But although that ruling eliminated the uncertainty in the duration of Respondent's interim suspension, Respondent nonetheless had been ordered to refrain from practice in the District of Columbia for a second 60–day period as a sanction for his Virginia misconduct. And Bar Counsel's withdrawal of his opposition to Respondent's motion to set aside the interim suspension order and his subsequent statement that he does not oppose *nunc pro tunc* treatment in this matter suggests that Bar Counsel has no reason to assert that Respondent violated that order. In sum, Respondent, to sanction his Virginia misconduct, already has suspended his District of Columbia practice for two 60–day periods—August 24–October 24, 2005 and April 26–June 26, 2006. Were he required to execute the 60–day suspension that D.C. Bar R. XI, § 11 calls

for in this matter, he would have to undergo yet a third 60–day suspension for the same misconduct. Even Respondent's second suspension, in the words of the Court in *Goldberg*, "would tend to increase the punishment far beyond that intended by the original state and far beyond the degree of discipline warranted." *Goldberg*, 460 A.2d at 985. We thus are loathe to recommend that he be required to suspend his District of Columbia practice for a third time.

We therefore recommend that, in accordance with D.C. Bar R. XI, § 11, the length of Respondent's suspension from the practice of law in the District of Columbia be for 60 days, the same length as the Virginia suspension. But we also recommend that the Court at the same time direct an immediate stay of that suspension in favor of a 60–day period of unsupervised probation. This disposition would moot all questions of *nunc pro tunc* treatment for purposes of reinstatement, because no future reinstatement of Respondent is anticipated. Because our recommendation stems from the unfairness of multiple suspensions that was pointed out in *Goldberg*, we have addressed the question whether, as a matter of fairness, the circumstances require that additional suspension order should be executed or, as we conclude, stayed in favor of probation.

Since our recommendation moots Respondent's request for *nunc pro tunc* treatment, we therefore have not directly considered that issue. Although *nunc pro tunc* treatment was involved in the Court's resolution of the *Slosberg* case, we do not

---

*Id.* at 728.

No decision of the Court has held that compliance with the section 14 requirements at the time of his foreign discipline and before any District of Columbia suspension has been ordered is necessary for concurrent running of the future District of Columbia suspension with the foreign suspension. Board Rule

8.5(b) appears to impose such a requirement, but we have found no decision of the Court that has denied concurrent treatment of the two suspensions on the ground that no affidavit in the form of a section 14(g) compliance affidavit was filed at the time of the foreign suspension.

deem that aspect of the Court's decision as providing the rule of decision in this matter. *Nunc pro tunc* treatment is a procedural device ordained to answer the question on what date, under D.C.Bar. R. XI, § 16(c), an additional suspension is deemed to start for reinstatement purposes. In *Slosberg*, however, the Court put elementary fairness above the requirements of Section 16(c). After first concluding that a three-month reciprocal suspension was warranted in *Slosberg*, the Court then dealt with the question when that reciprocal suspension would be deemed to start under Section 16(c). It reached the conclusion that Section 16(c) would mandate that the reciprocal suspension start on August 24, 1994, a date that would leave most of that suspension to be served after the Court's order. That result would have been plainly unfair to the respondent, because he previously had served a voluntary, self-suspension in accordance with the *Goldberg* rule and had been under an order to serve a lengthy District of Columbia interim suspension. *Slosberg*, 650 A.2d at 1332. To avoid that unfair, excessive suspension and thus achieve "[e]lementary fairness" in *Slosberg*, the Court employed a device, similar in some respects to a stay, that had the effect of preventing the reciprocal suspension from becoming an unfair add-on to the suspensions that the respondent previously had served.

The specific problem in *Slosberg* was somewhat like the problem in this matter. The Court's application of Section 16(c) only permitted the reciprocal three-month suspension the Court had in mind in *Slosberg* to start no earlier than August 24, 1994, a date that was less than one month

before the date the Court had vacated respondent's interim suspension, September 20, 1994.[15] A three-month suspension ordered, *nunc pro tunc*, to commence on the date set by D.C. Bar Rule XI, § 16(c) therefore would have required the respondent in *Slosberg* to undergo two months of suspension in addition to the lengthy periods he already had served. To resolve that problem, the Court held that "[e]lementary fairness require[d] that we *ignore the effect* of this court's [September 20, 1994] order" vacating the interim suspension, and it deemed that interim suspension to have continued in effect until November 24, 1994. *Id.* (emphasis added). By this device, the Court gave the respondent in *Slosberg* credit for three full months of previously suspended practice (from August 24 to November 24), even though the actual time he was suspended after complying with Section 14(g) had only been less than a month (from August 24 to September 20, 1994). That constructive three-month period of suspended practice was equal to the three-month suspension entered as reciprocal discipline, and the respondent was not ordered suspended for any time after the Court's reciprocal disciplinary order was entered.

Ignoring the effect of a previous order is one way for a court to achieve elementary fairness. Staying the effect of a prospective disciplinary order at the time of its entry is another way to attain the same goal. In this matter, we recommend the stay as a direct method of affording Respondent elementary fairness in the face of the tangled web of disciplinary procedural rules in which we now find him ensnarled.

---

**15.** The Court vacated the interim suspension order in *Slosberg* less than one month after a compliant Section 14(g) affidavit had been filed based on Bar Counsel's stated position "that the period of active suspension imposed in the original jurisdiction had been fully served on a reciprocal basis, as a result of the interim suspension." *Slosberg*, 650 A.2d at 1332.

## III. RECOMMENDATION

The Board recommends that, as reciprocal discipline in this matter, the Court enter an Order suspending Respondent Michael J. Beattie from the practice of law in the District of Columbia for 60 days and at the same time staying that suspension in favor of a 60–day period of unsupervised probation. We further recommend that, as a condition of that probation, Respondent be directed to inform Bar Counsel if he now is or should become the subject of any disciplinary complaints or proceedings in Virginia during the period of the probation. *Compare Slosberg*, 650 A.2d at 1333.

BOARD ON PROFESSIONAL RESPONSIBILITY

By: /s/

James P. Mercurio

All members of the Board concur in this Report and Recommendation.

## APPENDIX

The two affidavits that Respondent filed with the Court on May 22, 2006, read as follows:

### (1)

#### ₒ *AFFIDAVIT*

I, Michael J. Beattie, do solemnly swear under the penalties of perjury that the statements of this affidavit are true and correct.

In response to the April 26th 2006 order, and complying with the requirements of D.C. Bar Rule XI, § 14, I submit the following affidavit for consideration for nunc pro tunc treatment. I was suspended by the Virginia state bar on August 24, 2005 to October 24, 2005. During the suspension, I did not practice law in the state of Virginia or the District of Columbia. I promptly noti-

fied all clients, judges and adverse parties of my suspension, via certified mail, return receipt. In addition, I swear that I am not currently practice [*sic*] law in the District of Columbia during the interim suspension. Please find attached the supporting evidence of my compliance with Bar Rule XI, 14.[16] I also certify that I have sent a copy of this affidavit to the DC Bar Counsel, as well as all other supporting documentation Currently, I am admitted to practice in:

The Fourth Circuit

The DC Circuit

US DISTRICT Court for DC

Virginia Supreme Court

DC Court of Appeals

United States Court of Appeals for the 11th Circuit

Sincerely,

Michael J. Beattie

[signed]

### (2)

#### *Goldberg Affidavit*

In compliance with Board rule 8.5(b) I submit the following Goldberg affidavit in support of nunc pro tunc treatment. I was suspended August 24, 2005 to October 24, 2005 from the Virginia Bar. I promptly notified the DC bar counsel on August 25, 2005 of my suspension from the Virginia Bar and complied with their instructions. During the time period of August 24, 2005 to October 24, 2005, I did not practice law in Virginia or the District of Columbia. I have submitted a section 14(g) affidavit to the court and the board.

---

16. No "supporting evidence" was attached to the Affidavit Respondent filed on May 22, 2006. We assume, however, that the "supporting evidence" referred to in that affidavit is the "supporting evidence" that he did attach to the unsworn "Affidavit" he filed on May 7, 2006.

I, Michael J. Beattie, do solemnly swear under penalties of perjury that the statements in this affidavit are true and correct.

Michael J. Beattie

[signed]